**James R. BATES and Swann L. Bates, Appellants,**

v.

**The LAW FIRM OF DYSART, TAYLOR, PENNER, LAY & LEWANDOWSKI, Respondent.**

No. WD45106.

Missouri Court of Appeals, Western District.

April 28, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 3, 1992.

Charles L. House, Charles L. House & Associates, James P. Cannon, Law Office of James P. Cannon, Kansas City, for appellants.

Timothy M. Aylward, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent.

Before LOWENSTEIN, C.J., P.J., and SHANGLER and SMART, JJ.

SMART, Judge.

Appellants, James and Swann Bates, appeal from the Circuit Court of Jackson County's entry of summary judgment in favor of respondent, the law firm of Dy-

sart, Taylor, Penner, Lay & Lewandowski (Dysart firm), arising out of an action brought by appellants for malicious prosecution and negligence. The suit arose out of two underlying lawsuits concerning disputes between condominium owners and the developers of a condominium project at the Lake of the Ozarks. Appellants contend that the trial court erred in granting summary judgment in favor of the defendant law firm.

Judgment Affirmed.

James Bates developed condominium buildings at the Lake of the Ozarks, known as the Osage Heritage Condominiums, in the early 1970s. In 1980, Mr. Bates constructed another condominium building. At this time, Mr. Bates sent letters to all the existing condominium owners in the Osage Heritage Condominium Association (OHCA) seeking their cooperation with his further development plans and assuring them that effort would be made to minimize any inconvenience during construction and that any damage done to the roads during construction would be repaired. During the subsequent construction, the roads and seawalls in the condominium complex sustained some damage, and disputes began evolving between Mr. Bates and OHCA, which was represented by Lewis Dysart.

In 1984, Mr. and Mrs. Bates filed suit against one set of owners of a condominium unit to reform a warranty deed to correct an alleged mistake in the legal description. The condominium owners, represented by the Dysart firm, filed an answer and a counterclaim alleging fraudulent misrepresentations by the Bateses, stating that the Bateses had assured the condominium owners that all roads and seawalls would be maintained in a safe and usable condition. This suit prayed for $30,000.00 actual damages and $100,000.00 punitive damages. The Dysart firm also filed a separate suit in behalf of OHCA against the Bateses on the same day alleging the same

fraudulent misrepresentations and seeking $1,050,000.00 actual damages and $3,500,-000.00 punitive damages. The Bateses filed a motion to dismiss the action brought by OHCA for failure to prosecute in the name of the real parties in interest, which motion was subsequently granted.[1] Elizabeth Bandoli Happe, an attorney in the Dysart firm, wrote letters to all of the owners of the condominiums advising them that the suit would be brought in their individual names and requesting answers to questionnaires to complete the firm's factual investigation. She sought information related to the acquisition of the property and information as to representations made at the time of the purchase, which a number of the individual owners supplied. Following this investigation, a new lawsuit was filed against the Bateses in the name of 70 individual condominium owners and the OHCA, again alleging fraudulent misrepresentations. Later, following the deposition of Mr. Bates, the Dysart firm amended the petition, dropping the Bateses individually and substituting the statutory trustees of OHCA Developers, Inc., a corporation, as defendants in lieu of James and Swann Bates individually. James Bates was listed as one of four statutory trustees. The parties have agreed that the effective date of the amendment was March 12, 1987.

■■■■ Mr. and Mrs. Bates brought an action in December, 1987, for malicious prosecution against 20 selected individual condominium owners as a result of having been named as defendants in the previous lawsuits. The Dysart firm was not named as a defendant. The 20 individual members raised the affirmative defense of "advice of counsel" in their answer to the Bateses' suit stating that they had reasonably relied upon the legal advice of their attorneys in deciding to bring the action for fraudulent misrepresentation. On February 1, 1989, Mr. and Mrs. Bates voluntarily dismissed their lawsuit against the 20 individual owners without prejudice. Shortly

---

1. The suit was not prosecuted in the name of any individual plaintiffs, but only in the name of the OHCA, an association. The trial judge ruled that the suit fᴏᵣ fraudulent misrepresenta-

tions could be brought only in the names of individuals who allegedly relied upon the alleged misrepresentations.

thereafter, a month before the expiration of the period of limitations, a meeting was held between the Bateses' attorney, OHCA's attorney and members of the Dysart firm. Mark Schmid, another attorney for the Bateses, also attended for the expressed purpose of evaluating a potential lawsuit against the Dysart firm. One of the items discussed was a possible settlement of a claim against the Dysart firm before the statute of limitations expired on March 12, 1989.[2] No settlement was achieved. On March 8, 1989, four days before the expiration of the period of limitations, the suit was refiled. This time the defendants were the OHCA and 68 individual owners. Neither the Dysart firm nor any of its attorneys were named as defendants.

In April 1990, the Bateses moved for leave to amend their petition for malicious prosecution dropping the OHCA and all individual defendants, and substituting as the sole defendant the Dysart firm. This occurred more than a year after the two-year limitations period (for malicious prosecution claims) had expired. Leave was granted for the substitution. The Dysart firm filed a motion for summary judgment arguing that the statute of limitations had expired. The firm also moved for summary judgment on the accompanying negligence claim (on the grounds that the law does not recognize a negligence claim by a party against the attorney for the opposing party). Summary judgment was granted as to both counts. James and Swann Bates appeal the grant of summary judgment by the trial court.

■ Appellate courts review summary judgment by evaluating, first, whether a genuine issue of material fact existed which necessitates a trial and, second, whether respondent was, as a matter of law, entitled to judgment. *Erickson v. Pulitzer Pub. Co.*, 797 S.W.2d 853, 857 (Mo. App.1990). Summary judgment will be up-

held if there are no genuine issues of material fact requiring resolution by the trier of fact. *American Bank of Princeton v. Stiles*, 731 S.W.2d 332, 338 (Mo.App.1987). " '[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party ... If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted.' " *Id.* [quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) ].

Appellant's first point on appeal is that the trial court erred in finding that plaintiffs' cause of action was barred by the statute of limitations because plaintiff-appellants were entitled to the benefit of the "relation back" rule of Rule 55.33(c).

■ Rule 55.33(c) sets forth three requirements for when an amendment relates back to the original filing of a petition for the purpose of determining whether the statute of limitations has run. First, the claim or defense asserted in the amended pleading must have arisen out of the same conduct, transaction or occurrence set forth in the original pleading. *Id.* Second, the party to be brought in by the amendment must have received notice of the commencement of the action, so as not to be prejudiced in maintaining a defense to the action. *Id.* Third, the party to be brought into the action by amendment must have known or should have known that absent a mistake concerning the identity of the proper party, the action would have been instigated against him. *Id.*

■ Relation back has historically been applied to situations involving a correction of a misnomer. *Hoey v. St. Luke's Episcopal Presbyterian Hospital*, 713 S.W.2d 636, 638 (Mo.App.1986). While the use of relation back to change a party defendant may be broader than the mere correction of

---

**2.** A malicious prosecution action does not accrue until the underlying proceeding has been terminated in plaintiff's favor. *Arana v. Reed*, 793 S.W.2d 224, 226 (Mo.App.1990). Termi-

nation may occur as a result of an abandonment of the claim. At oral argument in this case, the parties conceded that an abandonment occurred March 12, 1987.

a misnomer, it is still necessary that a mistake "concerning the identity of the proper party" be the reason for the failure to timely plead. *Shroyer v. McCarthy,* 769 S.W.2d 156 (Mo.App.1989). Appellants Mr. and Mrs. Bates argue that here they were mistaken as to the identity of the proper party defendants until after the running of the statute. They say they previously assumed the condominium owners were at fault for the allegedly malicious and false allegations of the suit, rather than the attorneys for the condominium owners. Now that they have obtained discovery of the questionnaires completed by the condominium owners at the request of the Dysart firm, they realize their previous assumptions concerning fault were erroneous. They say that this was their "mistake." The problem, however, is that appellants knew that the Dysart firm was representing the condominium owners in the original action; and they knew that the condominium owners asserted the "advice of counsel" defense throughout the entire action. At one point in the lawsuit, leave to amend was sought by appellants to include Elizabeth Bandoli Happe, a member of the Dysart firm, as a party defendant, but leave to amend was denied by the court. Thereafter, the suit was voluntarily dismissed without prejudice and refiled. One would expect that the newly filed suit would have included Mrs. Happe as a named defendant, since leave to add her as a defendant had previously been sought. However, the new suit, while naming all of the condominium owners, did not include Mrs. Happe or her firm. Additionally, a meeting was held on February 15, 1989, for which appellants engaged an additional attorney for the purpose of evaluating appellants' claim against the Dysart firm, and to try to negotiate settlement of the claim. After all of that,

the statute of limitations was allowed to run without the Dysart firm being named.[3]

Based on the above evidence, it is apparent that the amendment in the present case attempting to add the Dysart firm to the lawsuit was not a correction of a mistake as to the identity of the proper party defendant, but was an attempt to change the strategy of the litigation by aiming at the attorneys of the owners. In view of the failure of Mr. and Mrs. Bates to show that there was a "mistake," it cannot be shown [as required by Rule 55.33(c) ] that the Dysart firm knew or should have known that, absent a mistake as to the identity of the proper party, the action would have been instigated against the Dysart firm. Under these circumstances, the amended petition does not relate back to the original lawsuit. *See Beatty v. Metropolitan St. Louis Sewer District,* 700 S.W.2d 831 (Mo. banc 1985), appeal after remand 731 S.W.2d 318 (Mo.App.1987).

The Bateses argue that there are certain equitable reasons they should now be able to take aim at the Dysart firm. They point out that the difficulties in obtaining cooperation with discovery (the "stonewalling" actions of their opponents) justified their failure to bring in the Dysart firm earlier. Because of their concern to avoid making unjust accusations, they chose not to sue the attorneys until they had evidence. They contend that the law should avoid punishing a party which is only exercising commendable caution and restraint. However, this court is aware of no authority which allows a relation-back amendment simply because some party was not cooperative in supplying discovery prior to the expiration of the limitations period.[4] Nor does excusable neglect satisfy the requirement of a "mistake" under Rule 55.33(c). *Shroyer v. McCarthy,* 769 S.W.2d 156, 159 (Mo.App.1989).

---

**3.** The present counsel for Mr. and Mrs. Bates did not become involved in this litigation until after the expiration of the two year statute of limitations.

**4.** There is nothing in the record indicating that the Dysart firm, in resisting discovery of certain items, violated any court orders or committed

any fraudulent actions. Moreover, because the material sought in this case constituted written communications between attorney and client, the Dysart firm presumably had a duty to the client not to release the information absent the permission of the client or an order of the court.

This court need not form an opinion as to the merit of the proposed malicious prosecution claim against the Dysart firm, because the record reveals that the claim is barred by the statute of limitations.[5] Summary judgment was properly granted as to Count I (malicious prosecution).

Next we turn to consider Count II of appellant' petition, which sets out an alternative theory of negligence, which is based upon the same fact allegations as the malicious prosecution claim. If appellants' alternative theory does not state a cause of action for negligence, or actually states a cause of action in malicious prosecution, then summary judgment was properly granted as to that count also.

■ Mr. and Mrs. Bates argue that their negligence claim is based upon a duty owed to the "public at large" to exercise ordinary care to avoid causing injury through negligent pleading. This case, of course, is not about the "public at large" but is instead about the duty owed an opponent, if any. Appellants have failed to cite any Missouri statutory or case law authority which establishes a duty of ordinary care owed by an attorney to his client's adversaries. Without any such cited authority, this court cannot find the existence of any such duty. Indeed, it is to be assumed that the legal duty owed to adversaries is merely the duty encompassed in the common law actions of malicious prosecution and abuse of process, and any statutory adaptations thereof. While it is desirable that litigation attorneys exercise every consideration to avoid causing needless pain to opposing parties, the law recognizes no legal duty to exercise care for the interests of opposing parties. Summary judgment was properly granted as to Count II also.

Respondent's motion to dismiss appellants' brief on appeal, which was taken under advisement, has been considered. Motion denied. This court finds that summary judgment was properly granted as to

both counts of appellants' petition. Judgment affirmed.

All concur.

---

5. It also is unnecessary, in view of the fact that the claim is barred by the statute of limitations, to review whether the claim is barred by a release entered into at the time of the settlement of the original suit against the development corporation.